Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| BENJAMÍN RIVERA COLÓN<br><br>Recurrida<br><br>v.<br><br>POWER SECURITY, INC. Y/O UNITED SURETY AND INDEMNITY COMPANY<br><br>Recurrente<br><br>_____<br><br>BENJAMÍN RIVERA COLÓN<br><br>Recurrida<br><br>v.<br><br>POWER SECURITY, INC. Y/O UNITED SURETY AND INDEMNITY COMPANY<br><br>Recurrente | KLRA202400453<br><br><br><br><br><br><br><br><br><br><br><br>CONSOLIDADO CON:<br><br><br><br><br><br><br><br>KLRA202400456 | Revisión Administrativa procedente de la Oficina de Mediación y Adjudicación del Departamento del Trabajo y Recursos Humanos del Estado Libre Asociado de Puerto Rico<br><br>Sobre:<br>Despido Injustificado<br><br>Querella Número:<br>AC-23-170<br>_____<br>Revisión Administrativa procedente de la Oficina de Mediación y Adjudicación del Departamento del Trabajo y Recursos Humanos del Estado Libre Asociado de Puerto Rico<br><br>Sobre:<br>Despido Injustificado<br><br>Querella Número:<br>AC-23-170 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de octubre de 2024.

Las recurrentes, United Security and Indemnity Company (USIC) y Power Security Inc. (PSI), comparecen ante nos para que dejemos sin efecto la *Resolución y Orden* emitida por la Oficina de Mediación y Adjudicación del Departamento del Trabajo y Recursos Humanos del Gobierno de Puerto Rico (OMA), el 1 de julio de 2024, notificada el 2 de julio de 2024. Mediante la misma, el referido organismo declaró con lugar una querella sobre despido

injustificado incoada por el señor Benjamín Rivera Colón (recurrido), al amparo de lo dispuesto en la Ley de Indemnización por Despido sin Justa Causa, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a *et seq.*, según enmendada.

Por los fundamentos que expondremos a continuación, se revoca la *Resolución y Orden* recurrida.

**I**

El 4 de diciembre de 2023, el recurrido presentó la querella de epígrafe en contra de las entidades aquí recurrentes ante la OMA, ello tras llenar el formulario correspondiente. En la misma, indicó haber laborado para la recurrente PSI como Oficial de Seguridad, desde el 12 de febrero de 2018 hasta el 23 de diciembre de 2022, fecha en la que, alegadamente, fue despedido. Conforme expuso, devengaba un salario de $9.50 la hora y, en el encasillado en el que se le requería exponer una breve descripción de los hechos que dieron base a la controversia, se limitó a exponer lo siguiente: "Ellos alegan que yo renuncié, cuando no fue así".[1] De este modo, solicitó que se diera curso al procedimiento administrativo correspondiente a los fines de que se le concediera la mesada legal aplicable en una suma de $6,380.96.

Tras ciertos trámites propios a la notificación de la querella, el 13 de febrero de 2024, la recurrente USIC presentó su *Contestación a Querella.* En la misma, indicó que la querella, según redactada por el recurrido, no era susceptible de ser adecuadamente contestada, toda vez que no contenía alegaciones específicas en su contra. A tenor con ello, alegó que la misma dejaba de exponer una reclamación que justificara la concesión de un remedio y, entre sus defensas afirmativas, expuso que nada adeudaba al recurrente. Así,

---

[1] Véase: Apéndice, *Querella* (Formulario OMA- 23), pág. TA 005.

la recurrente USIC solicitó que se declarara *No Ha Lugar* la reclamación de autos.

Así las cosas, el 28 de febrero de 2024, el recurrido presentó *Moción Notificando Status del Caso*. En la misma, advirtió al organismo concernido que, pese a haber sido debidamente notificada de la presentación de la querella de epígrafe, así como de la calendarización de la vista administrativa a celebrarse, la recurrente PSI no había presentado la correspondiente alegación responsiva. De este modo, solicitó que se anotara su rebeldía, toda vez la falta procesal señalada. En respuesta, mediante *Resolución Interlocutoria y Orden* del 1 de marzo de 2024, notificada el 4 de dicho mes y año, el Juez Administrativo designado declaró *Ha Lugar* la petición del recurrido. En consecuencia, anotó la rebeldía a PSI.

El 8 de marzo de 2024, el recurrido presentó una *Moción Notificando Envío de Interrogatorio*. Específicamente, indicó haber remitido un primer pliego de interrogatorio "al patrono querellado".[2] En respuesta, mediante *Resolución Interlocutoria y Orden* del 11 de marzo de 2024, el Juez Administrativo ordenó a las aquí recurrentes presentar la contestación pertinente, ello dentro de un plazo de treinta (30) días. No obstante lo anterior, el 15 de mayo de 2024, el recurrido presentó una *Moción Urgente Solicitando se dé por Admitido el Requerimiento de Admisiones*. En el pliego, indicó que, a dicha fecha, la recurrente PSI no había contestado el interrogatorio cursado, ni el requerimiento de admisiones. En consecuencia, solicitó que este último se diera por admitido en cuanto a la persona de su patrono. Mediante *Resolución Interlocutoria y Orden* de igual fecha, la OMA proveyó a lo solicitado.

---

[2] Véase: Apéndice, Anejo 7, *Moción Notificando Envío de Interrogatorio*, pág. TA-024.

Ese mismo 15 de mayo de 2024, el recurrido también presentó a la consideración de la OMA una *Solicitud de Sentencia Sumaria.*[3] En esta ocasión, expuso una serie de nuevos hechos los cuales intimó como incontrovertidos, todo sin sustentarlos en mayor base fáctica que una nota al calce en la cual hacía referencia al contenido del *Requerimiento de Admisiones* cursado a su patrono, la recurrente PSI.  En lo pertinente, indicó que no existía disputa alguna en cuanto a que laboró para la recurrente PSI desde febrero de 2018, hasta febrero de 2022, como guardia de seguridad. Indicó que era un empleado a tiempo completo, con una paga de $9.50 por hora, y que laboraba un aproximado de cuarenta (40) horas semanales. Añadió, que, en diciembre de 2022 se le notificó que habría de trabajar en las fechas 24 y 31 de diciembre de 2022, lo que calificó como un cambio en el horario que, según sostuvo, había acordado con su patrono. Afirmó que, tras notificar que no habría de presentarse a trabajar durante dichos días, ello en virtud del alegado acuerdo, posteriormente no se le asignó horario de trabajo.  El recurrente expuso que, luego de solicitar el pago de su nómina y de preguntar la razón de su despido, se le indicó que la separación de sus funciones obedeció a que él había renunciado. Conforme adujo, su patrono nunca le indicó las razones de su despido, ni dio curso al proceso correspondiente para dilucidar la controversia entre ellos habida. De este modo, solicitó que se declarara *Con Lugar* su solicitud y se determinara que el "patrono querellado venía obligado a pagar los $6,380.96 por mesada de despido".[4]

El 16 de mayo de 2024, la OMA emitió un *Resolución Interlocutoria y Orden* por la cual extendió a la recurrente USIC un plazo de veinte (20) días para responder a la *Solicitud de Sentencia*

---

[3] El recurrente acompañó su *Solicitud de Sentencia Sumaria* con la siguiente prueba documental: 1) copia de *Primer Pliego de Interrogatorio, Requerimiento de Admisiones y Producción de Documentos.*
[4] Véase: Apéndice, Anejo 11, *Solicitud de Sentencia Sumaria,* pág. TA-038.

*Sumaria* de referencia. En cumplimiento de orden, el 30 de mayo de 2024, la recurrente USIC presentó escrito en *Oposición a Solicitud de Sentencia Sumaria; Solicitud de Orden; y Solicitud para que se Señale Vista Evidenciaria.*[5] En el mismo, afirmó haber contestado el pliego de interrogatorio y el requerimiento de admisiones cursados por el recurrido de manera oportuna y sostuvo que, toda vez su condición de fiador, tenía derecho a presentar todas las defensas propias al contrato de fianza, así como, también aquellas aplicables al afianzado principal, la recurrente PSI. Al abundar, la entidad compareciente expresó que, dado a que ella presentó la correspondiente contestación a los antedichos mecanismos de descubrimiento de prueba, no admitiendo las aseveraciones allí contenidas, existía una controversia de hechos en cuanto a la alegación del recurrido. Así, solicitó a la OMA que se dejara sin efecto la determinación por la cual se dio por admitido el requerimiento de admisiones en controversia y que denegara la *Solicitud de Sentencia Sumaria* promovida por el recurrido. De igual modo, solicitó que se proveyera para la celebración de una vista evidenciaria en la que se le permitiera presentar prueba a su favor.

El 31 de mayo de 2024, el recurrido presentó escrito intitulado *Dúplica a Oposición se Dicte Resolución Sumaria.* En esencia, indicó que a la recurrente USIC no le asistían las prerrogativas de su patrono, la recurrente PSI, sino, a lo sumo, una acción de nivelación contra este para cobrar, la cantidad que tuviese que pagar por razón de la querella de epígrafe. En respuesta, el 3 de junio de 2024, la recurrente USIC se expresó en torno al antedicho pliego mediante *Dúplica a Dúplica a Oposición se Dicte Resolución Sumaria.* En lo atinente, afirmó que, contrario a la interpretación del recurrido, el

---

[5] La recurrida USIC acompañó su escrito en oposición con la siguiente prueba documental: 1) copia de *Primer Pliego de Interrogatorio, Requerimiento de Admisiones y Producción de Documentos;* 2) copia de su *Contestación a Primer Pliego de Interrogatorio, Requerimiento de Admisiones y Producción de Documentos* con la debida certificación de su notificación al recurrido.

derecho de nivelación no era la única facultad que le asistía a un fiador. Al respecto, expresó que, en virtud de lo dispuesto en el Artículo 1485 del Código Civil, 31 LPRA sec. 10603, tenía derecho a levantar todas las defensas de su fiado como si fueran suyas. A tenor con dicha premisa, sostuvo que dicha norma no era incompatible en el ordenamiento laboral, por lo que, al momento de anotarse la rebeldía de la recurrente PSI, el recurrido debió haber solicitado una vista para probar sus alegaciones, a la cual, como fiadora de su patrono, estaba legitimada a comparecer para presentar sus defensas. Así, la recurrente USIC se reiteró en la súplica de su oposición a la sentencia sumaria peticionada por el recurrido.

El 2 de julio de 2024, la OMA notificó la *Resolución y Orden* aquí recurrida. En la misma, el Juez Administrativo concluyó que la anotación de la rebeldía de la recurrente PSI, tenía el efecto de que se dieran por admitidos todos los hechos correctamente alegados. Sobre ello indicó que "según sur[gía] de la querella"[6], el recurrido llegó a un acuerdo particular con su patrono respecto a los horarios y días de trabajo a ejecutar como Oficial de Seguridad de la entidad que fue incumplido por esta. Tras abundar sobre el acuerdo alegadamente contenido en la querella de autos, el Organismo calificó de suficientes las expresiones incluidas en el formulario pertinente. Sobre ello, indicó que las mismas permitían a las recurrentes conocer los términos de la reclamación en su contra, por lo que, afirmó que, al optar por no comparecer, solo procedía anotar la rebeldía de la recurrente PSI. En su dictamen, la OMA afirmó que el recurrido sustentó la inexistencia de controversia alguna en cuanto a los hechos que expuso en su *Solicitud de*

---

[6] Véase: Apéndice, Anejo16, *Resolución y Orden,* pág. TA-164,

*Sentencia Sumaria* y añadió que la recurrente USIC solo se limitó a presentar argumentos que no refutaron los mismos.

Con respecto a la petición de la celebración de una vista, la OMA resolvió que, dado a que el recurrido no solicitaba una partida por concepto de daños, la misma era improcedente. Igualmente, expresó que tampoco procedía dejar sin efecto la determinación sobre el requerimiento de admisiones, al indicar que ello redundaría en favorecer a una parte declarada en rebeldía que optó por quedarse cruzada de brazos. Sobre tal particular, la OMA reputó dicha solicitud como un intento de litigación colateral en favor de la recurrente PSI. A su vez, añadió que los argumentos de la recurrente USIC pretendían enmendar su contestación a la querella, todo, sin prestar alguna defensa con relación al asunto medular de la reclamación de epígrafe. De esta forma, la OMA sostuvo que la recurrente USIC no la colocó en posición suficiente para intimar como controvertido el reclamo del recurrido. Así, y tras reiterar que el recurrido era acreedor del remedio solicitado, la OMA declaró *Ha Lugar* la acción de epígrafe. En consecuencia, ordenó a las recurrentes a satisfacer, de manera solidaria, la suma de $6,380.96 a favor del recurrido, ello por concepto de la mesada aplicable a su despido injustificado.

Inconforme, el 1 de agosto de 2024, la recurrente USIC presentó el recurso de revisión judicial de denominación alfanumérica KLRA202400453. En el mismo, formula los siguientes señalamientos:

> Erró la OMA al dictar resolución sumaria en contra de USIC a pesar de que la "Solicitud de Sentencia Sumaria" del querellante-recurrido estaba dirigida exclusivamente a PSI.

> Erró la OMA toda vez que, en contravención a lo que expresamente establece el Reglamento de la OMA y la jurisprudencia, dictó resolución sumaria sin haber señalado la vista en rebeldía respecto al patrono.

Erró la OMA al considerar como hechos incontrovertidos el requerimiento de admisiones cursado por el querellante-recurrido, a pesar de que el mismo fue cursado por PSI y/o USIC y a pesar de que PSI se encontraba en rebeldía y de que USIC lo contestó oportunamente.

Erró la OMA al resolver que USIC no controvirtió ninguno de los hechos materiales señalados por el querellante-recurrido en su "Solicitud de Sentencia Sumaria".

Por su parte, igualmente en desacuerdo con la referida *Resolución y Orden,* el 16 de agosto de 2024, la recurrente PSI presentó el recurso de revisión judicial de denominación alfanumérica KLRA202400456. En el mismo plantea lo siguiente:

Erró la Oficina de Mediación y Adjudicación (OMA) al declarar con lugar la Solicitud de Sentencia Sumaria interpuesta por la parte querellante en el presente caso, habida cuenta de que la querella presentada no es notificación suficiente y deja de exponer una reclamación que justifique la concesión de un remedio a favor de la parte querellante y porque tal determinación equivale a una injusticia y privación de la propiedad de la parte querellada sin que se le brinde previo a ello, la celebración de un debido proceso de ley.

Mediante *Resolución* del 21 de agosto de 2024, ordenamos la consolidación de los recursos de epígrafe, ello de conformidad con las disposiciones de la Regla 17 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 17.

Luego de examinar los recursos que nos ocupan, procedemos a expresarnos.

## II

### A

Es norma firmemente establecida en el estado de derecho vigente, que los tribunales apelativos están llamados a abstenerse de intervenir con las decisiones emitidas por las agencias administrativas, todo en deferencia a la vasta experiencia y conocimiento especializado que les han sido encomendados. *Otero Rivera v. Bella Retail Group, Inc.,* 2024 TSPR 70, 213 DPR ___ (2024); *Capote Rivera y otros v. Voilí Voilá Corporation y otros,* 2024

TSPR 29, 213 DPR ___ (2024); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 821-822 (2012); *Asoc. Fcias. v. Caribe Specialty II et al.,* 179 DPR 923, 940 (2010). En este contexto, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, establece el alcance de la revisión judicial respecto a las determinaciones administrativas. A tal efecto, la referida disposición legal expresa como sigue:

> El Tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.
>
> 3 LPRA sec. 9675.

Al momento de revisar una decisión agencial, los tribunales deben ceñirse a evaluar la *razonabilidad* de la actuación del organismo. *Rolón Martínez v. Supte. Policía,* supra; *The Sembler Co. v. Mun. de Carolina,* supra. Por ello, los tribunales no deben intervenir o alterar las determinaciones de hechos que emita, siempre que estén sostenidas por *evidencia sustancial* que surja de la *totalidad del expediente administrativo.* *Otero v. Toyota,* 163 DPR 716, 727-728 (2005); *Pacheco v. Estancias,* 160 DPR 409, 431-432 (2003). Nuestro Tribunal Supremo ha definido el referido concepto como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Rolón Martínez v. Supte. Policía,* supra; *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 437 (1997). Por tanto, compete a la parte que impugne la legitimidad de lo resuelto por un organismo administrativo, identificar prueba suficiente para derrotar la

presunción de corrección y regularidad que les asiste. *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019).

A tenor con esta norma, los foros judiciales limitan su intervención a evaluar si la decisión de la agencia es razonable y no si hizo una determinación correcta de los hechos ante su consideración. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* supra. En caso de que exista más de una interpretación razonable de los hechos, el tribunal debe sostener lo concluido por la agencia, evitando sustituir el criterio del organismo por sus propias apreciaciones. *Pacheco v. Estancias,* supra. Ahora bien, esta regla basada en deferencia no es absoluta. La misma cede cuando está presente alguna de las siguientes instancias: (1) cuando la decisión no está fundamentada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la apreciación de la ley, y; (3) cuando ha mediado una actuación irrazonable, o ilegal. *Otero Rivera v. Bella Retail Group, Inc.,* supra; *Costa Azul v. Comisión*, 170 DPR 847, 853 (2007).

**B**

Por su parte, en virtud de la Ley 384-2004, 3 LPRA sec. 320 *et seq.,* se enmendó la Ley Orgánica del Departamento del Trabajo, Ley Núm. 15 de 14 de abril de 1931, 3 LPRA sec. 304, *et seq,* a los fines de crear la Oficina de Mediación y Adjudicación (OMA) en la referida entidad gubernamental. En específico, el estatuto confirió a la OMA jurisdicción para atender reclamaciones obrero-patronales, todo mediante un procedimiento administrativo de adjudicación, de conformidad a lo establecido por la entonces vigente Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, 3 LPRA sec. 2101 *et seq*, estatuto derogado por la actual Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq.*

El Artículo 1 de la Ley Núm. 384-2004, *supra,* establece que la OMA tendrá jurisdicción concurrente con el Tribunal de Primera Instancia para emitir decisiones o resoluciones conforme a la ley y el derecho mediante los procedimientos establecidos en materia de derecho administrativo. A su vez, la Ley Núm. 384-2004, *supra,* le otorga a la OMA la facultad de conciliación y adjudicación sobre querellas por despido injustificado, en las cuales no se reclame indemnizaciones de daños y perjuicios.

Cónsono con la política pública del Departamento del Trabajo de fomentar el utilizar mecanismos complementarios al sistema judicial para resolver conflictos obrero-patronales de la manera más eficiente, rápida, económica y justa, se promulgó el Reglamento de Procedimientos de Mediación y Adjudicación de la Oficina de Mediación y Adjudicación, Reglamento Núm. 7019 de 11 de agosto de 2005. Reglas 1.1 y 1.3, Reglamento Núm. 7019, *supra.* En lo pertinente, respecto al ejercicio de las facultades adjudicativas de la OMA, el Reglamento 7019, *supra,* dispone los criterios que imprimen legalidad y suficiencia al contenido de toda querella sometida a la consideración del organismo. Específicamente, su Regla 5.2 dispone como sigue:

La querella deberá contener la siguiente información:

a.  Nombre completo de las partes:

1. Si alguna de las partes es persona natural, el nombre incluirá ambos apellidos;

2. Cuando la parte querellada sea una corporación, sociedad especial o profesional, se incluirá el nombre de ésta en el epígrafe, con todas sus direcciones y teléfonos conocidos.

b. Dirección y teléfono: Deberán incluirse las direcciones físicas, postales y de correo electrónico, números de teléfonos y facsímiles de todas las partes en la querella, así como cualquier otra

información que los identifique y permita corroborar su identidad o ubicación.

c. Cantidad de empleados afectados por la controversia y sus respectivos nombres.

d. **Relación sucinta y clara de los hechos que dan origen a la querella** y hojas de cómputos generadas en el Negociado de Normas de Trabajo.

e. Ley o leyes aplicables, según se dispone la Regla 1.3(b) de este Reglamento.

f. El remedio solicitado y la valoración del mismo, incluyendo reinstalación, salarios, penalidades o cualquier otro remedio, según se dispone en las leyes citadas en la Regla 1.3(b) de este Reglamento.

[…]. (Énfasis nuestro.)

Por su parte, la Regla 5.3 del precitado Reglamento, expresamente establece que, durante todo procedimiento administrativo llevado a cabo ante la OMA, las prerrogativas de todas las partes involucradas habrán de salvaguardarse. Entre los derechos que le asisten, se garantiza la notificación oportuna de la querella, a que la misma sea contestada, comparecer por derecho propio o mediante abogado, el derecho a presentar evidencia, el derecho a una adjudicación imparcial y a que la decisión que en su día se emita esté basada en el expediente administrativo. Con relación a ello y atinente a lo que nos ocupa, la Regla 5.5(a) del Reglamento Núm. 7019, *supra*, provee a toda parte querellada un término de diez (10) días, desde la notificación de la querella, para presentar su correspondiente contestación. Ahora bien, si no se presenta la alegación responsiva pertinente en la forma y término dispuesto, el Juez Administrativo competente está facultado para emitir una resolución concediendo el remedio solicitado. Regla 5.6, Reglamento Núm. 7019, *supra*. Así, el referido Reglamento contempla la aplicación del mecanismo de la rebeldía en las facultades adjudicativas de la OMA. Ahora bien, sabido es que un remedio en rebeldía solo procede si en la querella de que trate, el

querellante alega correctamente los hechos particulares, de modo que, de su faz, sean demostrativos de que, de probarlos, es acreedor del remedio solicitado. *Santiago Ortiz v. Real Legacy Assurance Company Inc.*, 206 DPR 194, 207 (2021). Por tanto, de no surgir hechos suficientes para sostener una determinación en contra de un patrono querellado, el foro adjudicativo competente viene llamado a celebrar las vistas que resulten necesarias para que el querellante demuestre sus alegaciones. *Íd,* pág. 208.

De otra parte, la Regla 5.11 del Reglamento Núm. 7019, *supra,* provee para que la OMA emita resoluciones sumarias. Al respecto, reza:

> La OMA ordenará el cumplimiento de lo que proceda en derecho cuando, en cualquier etapa del procedimiento adjudicativo, luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos. En tal caso, si una de las partes solicita reconsideración, el Juez Administrativo podrá citar a vista en reconsideración, siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.

A tenor con lo anterior, dentro del procedimiento administrativo efectuado en la OMA, el juzgador concernido está facultado para disponer de la controversia sometida ante sí mediante el mecanismo sumario de adjudicación. No obstante, tal cual expresamente lo dispone la citada Regla 5.11 del Reglamento Núm. 7019, *supra,* ello está condicionado a la inexistencia de una controversia real de los hechos medulares del caso.

**C**

De otra parte, por el contrato de *fianza* una parte se obliga a pagar o a cumplir por un tercero, en caso de este no hacerlo. Artículo 1472 del Código Civil, 31 LPRA sec. 10551. De este modo, el fiador "respalda la obligación que el deudor tiene con su acreedor, de suerte que, si aquél falla en cumplir con este, entonces, el fiador adviene responsable del cumplimiento". J.R. Vélez Torres, *Curso de Derecho Civil; Derecho de Contratos,* San

Juan, Universidad Interamericana de Puerto Rico, T.IV, Vol. II, pág. 528. Así, se "proporciona al acreedor mayor probabilidad de ver satisfecho su interés, ya que se amplía su poder de agresión a un patrimonio distinto del originalmente responsable". *Universal Ins. v. Popular Auto,* 207 DPR 228, 239 (2021).[7]  Este tipo de vínculo nace al amparo de una obligación válida que puede ser actual o futura, a la cual su vida jurídica está necesariamente supeditada, pero que no puede reclamarse contra el fiador hasta que dicha obligación sea líquida y exigible. Artículo 1476, 31 LPRA sec. 10561.

Igualmente, el estado de derecho reconoce que el contrato de fianza es una garantía personal, en virtud de la cual el fiador puede obligarse a menos, pero no a más de lo asumido por el deudor principal, ya sea en la cantidad o en lo oneroso de la obligación. Artículo 1475, 31 LPRA sec. 10554.  En este sentido, tras asumir la responsabilidad del deudor principal, sabido es que el fiador tiene derecho a oponer las defensas propias y las defensas a las que tuviere derecho el fiado, incluso, aun cuando éste último las haya renunciado. Artículo 1485, 31 LPRA sec. 10603.

**III**

En la presente causa, la recurrente USIC en esencia plantea que erró la OMA al disponer sumariamente de la querella de epígrafe, ello al sostener que, dado a que no concurrieron los criterios establecidos en el Reglamento Núm. 7019, *supra*, procedía la celebración de una vista evidenciaria para adjudicar la misma.  A su vez, sostiene que el Organismo incidió al acoger la *Solicitud de Sentencia Sumaria* del recurrido, ello sin considerar su contestación al requerimiento de admisiones por este cursado, así como al no intimar que le eran oponibles todas las defensas que su afianzada,

---

[7] Destacamos que la referida Opinión es una interpretación referente al Artículo 1721 del Código Civil de 1930 ya derogado.  No obstante, la misma es de aplicación al Artículo 1472 del vigente Código Civil, por ser el equivalente.

la recurrente PSI, podía presentar respecto al recurrido. De igual forma, aduce que la OMA incurrió en error al no estimar que controvirtió los hechos establecidos por el recurrido en su pliego. Por su parte, la recurrente PSI plantea que la OMA erró al resolver a favor del recurrido, ello al indicar que la querella en controversia dejaba de exponer una reclamación que justificara un remedio.

Habiendo entendido sobre los referidos señalamientos a la luz de los hechos, la prueba y la norma aplicable, resolvemos revocar la *Resolución y Orden* recurrida.

Un examen del expediente que nos ocupa, mueve nuestro criterio a diferir con lo resuelto por la OMA. El trámite procesal y sustantivo efectuado en la causa de epígrafe, claramente establece la concurrencia de los factores que nos permiten ejercer nuestras funciones revisoras respecto a la determinación de un organismo administrativo. A nuestro juicio, la determinación aquí recurrida es contraria a derecho, por lo que la misma debe ser dejada sin efecto.

Tal cual plantean las recurrentes, el caso de autos carece de los elementos que propician la disposición sumaria de la controversia entre las partes. Ciertamente, y contrario a lo resuelto por la OMA, la querella de epígrafe, la cual es un mero formulario, carece de suficiencia y especificidad. Ello hace que, en principio, las disposiciones estatuidas en la Regla 5.2 del Reglamento 1709, *supra* hayan sido inobservadas por el recurrido, puesto que este no expuso una relación sucinta y clara de los hechos constitutivos de su causa de acción. Esto redunda en que, ni las recurrentes, ni la OMA hayan sido puestas en condiciones tales, que hubiesen podido advertir, de manera adecuada, los términos de la reclamación del recurrido. Lejos de tratarse de una alegación específica sobre despido injustificado, la aseveración expuesta por el recurrido en el formulario en controversia, se limitó a indicar que "él no había renunciado". Sin embargo, nada expresó sobre hechos particulares

que permitieran entrever la causal por la cual promovió la querella de epígrafe en contra de su patrono y la fiadora de este.

Si bien la recurrente PSI no presentó su alegación responsiva a la querella, hecho que redundó en la anotación de su rebeldía, la OMA, fundamentándose en dicha incidencia procesal, no podía disponer del asunto de manera sumaria. Tal cual expuesto, un dictamen en rebeldía, únicamente resulta procedente si el ente adjudicativo cuenta con hechos suficientes para ejercer sus funciones al respecto. Sin embargo, esta no es la ocasión en la presente causa. A tenor con la conclusión relativa a la insuficiencia de lo alegado en la querella, y a los fines de dirigir el asunto de manera justa y correcta, la OMA debió haber celebrado la vista evidenciaria procedente. Aun con las implicaciones propias a la anotación de la rebeldía de la recurrente PSI, la vista en su fondo le hubiese permitido conocer el alcance y los términos de la reclamación sometida a su escrutinio la cual, recalcamos, fue en extremo insuficiente.

Por otra parte, precisa destacar que, aun cuando la recurrente PSI no presentó su contestación a la querella de epígrafe, así como tampoco respondió al pliego de interrogatorio ni al requerimiento de admisiones cursados por el recurrido, su fiadora, la recurrente USIC, contestó la querella y el descubrimiento de prueba cursado. Es por ello que, acogiendo el raciocinio que esta expone, ello en cuanto a su subrogación en los derechos de su afianzada, resultaba procedente que la OMA acogiera la contestación que, en cuanto al requerimiento de admisiones en disputa esta efectuó, y le permitiera, de este modo, exponer las defensas pertinentes en una vista evidenciaria. Los documentos de autos evidencian que la recurrente USIC, en todas las etapas del procedimiento en controversia, negó lo alegado por el recurrido. Ello, a nuestro juicio, en efecto, redundó en que los hechos expuestos en la *Solicitud de*

*Sentencia Sumaria* en controversia, los cuales, advertimos, no estuvieron debidamente sustentados de conformidad con las exigencias establecidas en el ordenamiento jurídico para el mecanismo en cuestión, quedaran debidamente controvertidos. Ante ello, la OMA debió haber provisto para el cauce ordinario de los procedimientos, de modo que la recurrente USIC, no solo pudiera exponer sus defensas personales, sino, también aquellas que le corresponden al fiado, aun cuando no contestó la querella.

La determinación aquí recurrida se aparta de lo que debería constituir una adjudicación correcta. A nuestro juicio, el remedio resuelto a favor del recurrido mediante el mecanismo sumario de adjudicación, está totalmente carente de apoyo fáctico. Nada en el expediente sostiene la procedencia de la súplica por este expuesta, así como, tampoco, la concurrencia de los elementos propios a una acción válida sobre despido injustificado. Las alegaciones que al respecto expuso son llanas, hecho que valida los argumentos de las recurrentes en contra de la determinación agencial concernida. Además, nuevamente reiteramos que la recurrente USIC contestó la querella y el descubrimiento de prueba cursado por el recurrido, controvirtiendo, de este modo, aseveraciones que nunca contaron con apoyo fáctico. Así pues, no podemos sino dejar sin efecto la *Resolución* recurrida.

**IV**

Por los fundamentos que anteceden, se revoca la *Resolución y Orden* recurrida.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones